### Sawyer Goodman Company v. John F. Neagle et al.

1. MECHANICS' LIENS—*What Is an Insufficient Notice.*—A notice which speaks of plaintiff's having been employed to furnish lumber to F. C. Neagle & Son Company (a corporation), whereas the lumber in question was furnished to the partnership, F. C. Neagle & Son, is misleading, not in accordance with the facts, and insufficient to support a petition for a mechanic's lien.

Petition to Foreclose a Mechanic's Lien.—Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge presiding. Heard in the Branch Appellate Court at the October term, 1902. Affirmed in part and reversed in part.   Opinion filed October 30, 1903.

JAMES LINDEN, attorney for appellant.

The notice required by law to be served on the owner by the materialman in order to preserve his lien, is intended solely for notice to put him on his guard and on inquiry. This is especially true when enough appears on the face of the notice to point the way to successful inquiry. Certainty to a common intent has always been held to suffice. Knabb's Appeal, 10 Pa. St. 188.

When the notice of materialman to be served on the owner in order to preserve his lien, is in all respects as required by the statute, except that he informs the owner he was employed by "F. C. Neagle & Son Company," instead of " F. C. Neagle & Son," and it appears that he was employed by F. C. Neagle & Son, the word "company" will be treated as surplusage, and it will be presumed, in the absence of evidence to the contrary, that such owner was not misled by such notice.   And where it appears that after the receipt of such notice the owner took an indemnity bond from the contractors, Neagle & Son, before mak-

Sawyer Goodman Co. v. Neagle.

ing a final settlement with them, and still retains five per cent of the contract price, it will be further presumed that such owner has acted upon such notice and waived any defect therein.   St. L. & P. R. R. Co. v. Kerr, 153 Ill. 182; Putnam v. Ross, 46 Mo. 337; Tibbetts v. Moore, 23 Calif. 208; Hauptman v. Catlin, 20 N. Y. 247; Roach v. Chapin, 27 Ill. 196.

A " notice is writing " is all the statute requires a materialman to serve on an owner in order to preserve his lien. Where notice is made in duplicate, the one offered in evidence and the one served on the owner are both originals; notice to produce a notice is not necessary.   Section 30 of Lien Law, in force July 1, 1887; Brown v. Booth, 66 Ill. 419; Prairie State L. & B. Assn. v. Gorrie, 64 Ill. App. 325.

FRANK P. REYNOLDS, attorney for appellee John F. Neagle.

ISRAEL SHRIMSKI, attorney for appellee Harris Wolf.

The mechanics' lien law is in derogation of the common law, is strictly construed, and all provisions thereof must be strictly complied with.

There was but one lien notice served on the appellee Harris Wolf.   Such notice was utterly defective and insufficient.   Butler v. Gain, 128 Ill. 23; Belanger v. Hersey, 90 Ill. 70; Cook v. Heald, 21 Ill. 429; Hindert v. American T. & S. Bank, 100 Ill. App. 85; Freeman v. Rinaker, 185 Ill. 172; May Purington & Bonner Brick Co. v. General Engineering Company, 180 Ill. 535; McDonald v. Rosengarten, 134 Ill. 126; McIntosh v. Schroeder, 154 Ill. 520; Williams v. Vanderbilt, 145 Ill. 238; Crandall v. Lyon, 90 Ill. App. 265; Buckely v. Commercial Nat'l Bank, 62 Ill. App. 202; Paddock v. Stout, 121 Ill. 571; Weber v. Bushnell, 171 Ill. 587; Ehdin v. Murphy, 69 Ill. App. 555; S. C., 170 Ill. 399.

MR. JUSTICE STEIN delivered the opinion of the court.

This is an appeal from a decree dismissing appellant's petition for a lien on account of lumber furnished by it as sub-contractor to the firm of F. C. Neagle & Son (of which appellee John F. Neagle is the surviving partner) in the

erection of a building on premises belonging to appellee Wolf. The petition was dismissed for want of a sufficient notice by appellant to Wolf. Whether this ruling was correct is the principal question in the case.

F C. Neagle & Son was a partnership composed of F. C. and John F. Neagle, and they as such partners had the contract from Wolf for the carpenter work in the building. Subsequently, on February 27, 1895, they entered into a sub-contract with appellant by which it was to furnish the lumber; and this it did, and the same was used in the building. F. C. Neagle died on or about June 22, 1895, thus dissolving the copartnership. At this time the sub-contract was fully completed. Previously steps had been taken for the formation of a corporation under the name of F. C. Neagle & Son Company; and this corporation commenced doing business under its charter June 27, 1895. Afterward, and before the service of the notice on Wolf, appellant sold and delivered lumber to the corporation for use, and the same was used by the corporation in the construction of the building.

Under these circumstances appellant, on October 25, 1895, served upon Wolf the following notice:

"To HARRIS WOLF:

You are hereby notified that we have been employed by F. C. Neagle & Son Company to furnish lumber to be used upon your building  *  *  *  and that we shall hold the building and your interest in the ground liable for the amount that may be due us or become due on account thereof."

Inasmuch as the notice speaks of appellant's having been employed to furnish lumber to F. C. Neagle & Son Company (the corporation), whereas the lumber in question was furnished to the partnership, F. C. Neagle & Son, it is claimed that the notice is defective and of no legal effect.

The statute in force at the time of the making of the sub-contract (Sec. 30, Ch. 82, Hurd's Rev. Stat. 1893) provides for the giving of a notice to the owner "substantially in the following form," to wit, the one above used. The

statutory form has a blank for the name of the chief contractor.

Appellant contends that the word "company" in the notice after "F. C. Neagle & Son" should be stricken out as surplusage. This might perhaps be properly done, were it not for the fact that there was a corporation in existence by that name, to which appellant had delivered lumber used in Wolf's building after the completion of the sub-contract and before the service of the notice. Moreover the language of the notice ("to furnish lumber to be used") is such as to lead any one reading it to the belief that it relates to lumber to be delivered after the service of the notice. But whether this be so or not, Wolf would naturally refer the notice to appellant's dealings with the corporation, and he would have been justified in believing, as he likely did believe, that the word "company" was inserted for that purpose. If he did not already know that the corporation was indebted to appellant, the legitimate effect of the notice was to start him on an inquiry whether the corporation was so indebted, and not whether the partnership was. The notice was misleading and not in accordance with the facts. To all intents and purposes it was the same as if a sub-contractor, having been employed by Smith, notifies the owner that he has been employed by Jones.

The court fixed the master's fees at $516, of which $216 was for the taking of testimony and the rest for hearing arguments of counsel, certifying to exhibits and making his report on the law and facts. There was another lien claimant in the case, William Jenkinson, and as to him the master also found that he had no lien. Nevertheless, the court ordered the entire $516 to be paid by appellant. Under Sec. 27 of Ch. 82 above referred to we think this amount should have been apportioned between appellant and Jenkinson, and that part of the decree is reversed and the cause remanded for that purpose. Affirmed in part and reversed in part.